UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PENNINGTON MCDANIELS,

      Petitioner,                                    Case No. 08-cv-11548

v.                                            HONORABLE STEPHEN J. MURPHY, III

JOHN PRELESNIK,

      Respondent.

_____/

**OPINION AND ORDER DENYING MCDANIELS' PETITIONS
FOR WRIT OF HABEAS CORPUS** (document nos. 1, 21)**, DECLINING
TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DISMISSING CASE**

Petitioner Pennington McDaniels seeks habeas relief under 28 U.S.C. § 2254. His

initial petition, filed on April 10, 2008, and his amended petition, filed on August 27, 2012,

both challenge his state convictions for first-degree premeditated murder, Mich. Comp.

Laws § 750.316(1)(a), and possession of a firearm during the commission of a felony

("felony firearm"), Mich. Comp. Laws § 750.227b. For the reasons stated below, the Court

will deny his petitions for habeas corpus relief.

**BACKGROUND**

The charges against McDaniels arose from the fatal shooting of Robert Blackwell, III,

on June 10, 2002, as he sat in a car at the corner of Gallagher and Remmington Streets

in Detroit, Michigan. Following a jury trial in Wayne County Circuit Court, McDaniels was

convicted of first-degree murder and felony firearm. The Court includes the relevant facts

relied on by the Michigan Court of Appeals, which are presumed correct on habeas review

pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir.

2009). The facts presented established that:

[N]o indication exists that defendant and the victim had a personal relationship, but defendant apparently believed that the victim had robbed his grandmother and inflicted head injuries on his aunt. Before the shooting, defendant armed himself with a .357-caliber revolver, two witnesses observed a man wearing a white t-shirt or towel on his head walking through yards and along streets toward the scene of the shooting, and defendant acknowledged in his statement that "[b]efore I shot into the car I pulled my t-shirt over my head so that no one would know who I was." Defendant committed the crime by shooting the victim five times, firing one shot into the victim's right neck and four more shots into the victim's left side. The eyewitness testified that she heard an initial gunshot, looked down the street, and saw a man wearing a white t-shirt on his head walk from the passenger side of the victim's car around to the driver's die, point his gun at the victim, and fire two or three more shots at him. After defendant fired the fatal shots, several witnesses saw defendant run away from the scene holding the t-shirt on his head. Along the route that defendant used to flee, the police later found the .357 revolver, which defendant admitted he discarded before they caught him.

*People v. McDaniels*, No. 247035, 2004 WL 1292497, at *4 (Mich. Ct. App. June 10, 2004).

McDaniels' conviction was affirmed on appeal. *See People v. McDaniels*, 471 Mich. 953 (2004). McDaniels filed a post-conviction motion for relief from judgment with the trial court, which was denied the motion.  *See People v. McDaniels*, No. 02-8005 (Wayne Cnty. Cir. Ct. July 5, 2006). On August 14, 2007, the Michigan Court of Appeals dismissed McDaniels' delayed application for leave to appeal because he failed to timely file the appeal as required by Michigan Court Rule 7.205(F)(3). *See People v. McDaniels*, No. 279190 (Mich. Ct. App. Aug. 14, 2007). And McDaniels then filed an appeal with the Michigan Supreme Court, which denied the motion because it was not persuaded to review the issues.  *See People v. McDaniels*,  480 Mich. 1012 (2008).

On April 10, 2008, McDaniels sought a writ of habeas corpus on the following nine grounds: (1) his confession should have been suppressed; (2) the trial court erred by concluding his challenge to the court's jurisdiction was meritless; (3) the trial court erred by concluding his challenge to the bindover lacked merit; (4) the trial court erred by concluding his right of confrontation was not violated; (5) the trial court erred by concluding his

prosecutorial-misconduct claim lacked merit; (6) the trial court erred by concluding his challenge to the judgment of conviction lacked merit; (7) the trial court erred by concluding his claim of ineffective assistance did not meet the *Strickland* standard; (8) he was entitled to a jury instruction on manslaughter; and (9) the evidence was insufficient to sustain the verdict of guilty for first-degree murder. On November 4, 2008, McDaniels then requested a stay to raise three additional claims in the state court. *See* Mot. Hold Habeas Pet. Abeyance, ECF No. 12. The Court granted McDaniels' motion and closed the case for administrative purposes.  *See* Order, ECF No. 17.

Proceeding again in state court, McDaniels filed a motion for relief from judgment. The trial court denied the motion because it merely reiterated the claims McDaniels raised in his first motion for relief from judgment. *See People v. McDaniels*, No. 02-8005-01 (Wayne Cnty. Cir. Ct. Oct. 13, 2010) (finding the motion successive under Michigan Court Rule 6.502(G)). McDaniels did not appeal the decision.  Instead, he filed a third motion for relief from judgment and argued Investigator Barbara Simon falsely testified at trial that there was no reported home invasion at McDaniels' aunt and grandmother's home. McDaniels also claimed the prosecutor should have known about the police report and his trial and appellate attorneys were ineffective for failing to investigate and find the report. The trial court held oral arguments on the claims, and denied McDaniels' motion.  *See* Order Den. Mot. Relief J., ECF No. 30-7; Tr. Mot. Hr'g, ECF No. 30-8.

McDaniels appealed, but the Michigan Court of Appeals dismissed his appeal for lack of jurisdiction. *See People v. McDaniels*, No. 308744 (Mich. Ct. App. Apr. 26, 2010). And the Michigan Supreme Court denied McDaniels' subsequent application for leave to appeal

because his motion for relief from judgment was a second or successive motion prohibited by Michigan Court Rule 6.502(G).  *See People v. McDaniels*, 491 Mich. 946 (2012).

On August 27, 2012, McDaniels filed a motion to lift the stay, and an amended habeas corpus petition with the Court.  *See* Mot. Lift Stay, ECF No. 19; Am. Pet., ECF No. 21. McDaniels' amended petition alleges: (1) the state court improperly applied the rule on second or successive motions for relief from judgment; (2) Investigator Simon committed perjury; (3) the prosecution failed to correct Investigator Simon's false and perjured testimony; (4) trial counsel failed to object to, and correct, Investigator Simon's false testimony, and appellate counsel failed to investigate and raise the issue on direct appeal; and (5) there was good cause for not raising the issue previously. Am. Pet., ECF No. 21. The Court granted McDaniels' motion and re-opened the case.  *See* Order, ECF No. 24.

## STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard for review for habeas cases:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable

application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted).

## DISCUSSION

### I.     Involuntary Confession

McDaniels alleges the trial court erred by failing to suppress his allegedly involuntary statement to the police. He argues that his statement to Investigator Simon was involuntary because Simon threatened him with life in prison if he did not tell her what happened. McDaniels also claims that he asked for a lawyer, but Simon told him a lawyer would not come to save the day.  Additionally, McDaniels claims that an officer entered the interview room, grabbed him by the neck, and told him to give a statement.  Finally, McDaniels maintains that he was not allowed to read his statement before signing it.

In determining whether a confession was made voluntarily, a court must consider the totality of the circumstances surrounding the interrogation to determine whether the defendant's "will [was] overborne and his capacity for self-determination critically impaired."

*Loza v. Mitchell*, 766 F.3d 466, 477 (6th Cir. 2014) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973)). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" *Id.* (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1973)). In addition to coercion, courts consider "the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health." *Withrow v. Williams*, 507 U.S. 680, 693 (1993). "In a federal habeas action, the burden of proving that the confession was involuntary rests with the petitioner." *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987), *cert. denied*, 484 U.S. 857 (1987). And voluntariness "need only be proven by a preponderance of the evidence." *Id.* (citing *Lego v. Twomey*, 404 U.S. 477 (1972)).

The Michigan Court of Appeals correctly summarized the relevant facts and the circumstances of McDaniels' statement to Investigator Simon:

> At the time of the statement, defendant was twenty-two years old, had progressed in school to the tenth grade, and had no difficulty reading the advice of rights form Simon presented him. Defendant was arrested within minutes of the crime, his interview took place within one to two hours after the crime, and neither defendant's nor Simon's testimony suggested that they had a prolonged interview. The testimony of both Simon and defendant showed that defendant read and understood each of his constitutional rights and initialed and signed the advice of rights form. Although defendant and his girlfriend testified that defendant had several drinks and smoked half a small marijuana joint earlier that afternoon, the officers who arrested defendant denied that he smelled of alcohol or appeared intoxicated at the time of his arrest several hours later, and Simon testified that defendant appeared clear and sober at the time of their interview, approximately 6:00 p.m. Simon also observed that defendant did not appear injured and denied that he ever complained regarding his condition at the time of the interview. Defendant did not suggest that Simon deprived him of food or sleep.

*McDaniels*, 2004 WL 1292497, at *1.

The facts are supported by the record and suggest McDaniels' confession was not coerced. The Michigan Court of Appeals concluded the trial court did not clearly err in

6

finding McDaniels' confession was given freely and voluntarily.  At trial, the prosecutor's witnesses and McDaniels presented conflicting testimony regarding the circumstances of the interview and confession. The state trial court found the police officers more credible than McDaniels, and the trial court's resolution of credibility issues is entitled to special deference, *see Patton v. Yount*, 467 U.S. 1025, 1038 (1984), particularly at a suppression hearing, *see Ramonez v. Berghuis*, 490 F.3d 482, 490–91 (6th Cir. 2007). The totality of the circumstances surrounding McDaniels' confession indicate that McDaniels' will was not overborne. And that conclusion is neither contrary to Supreme Court precedent nor an unreasonable application of Supreme Court precedent, nor an unreasonable determination of the facts. McDaniels is not entitled to relief on his challenge to the voluntariness of his confession.

Additionally, McDaniels asserts that his confession should have been suppressed as the fruit of an illegal arrest or seizure that violated his Fourth Amendment rights. But "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976).  An opportunity for full and fair consideration under *Powell* "means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013), *cert. denied*, 135 S. Ct. 1174 (2015).

McDaniels raised his Fourth Amendment claim in the trial court, in the Michigan Court of Appeals, and in the Michigan Supreme Court.  All three courts rejected his claim.  Under

*Powell* such consideration suffices to preclude federal habeas corpus relief. *Good*, 729 F.3d at 640; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012) (finding petitioner precluded from obtaining habeas relief because he "had ample opportunities to present [his] claims in state court"). McDaniels is not entitled to relief on his Fourth Amendment claim.

II.     Jury Instructions

McDaniels claims the trial court erred by not giving the jury an instruction on voluntary and involuntary manslaughter. The Michigan Court of Appeals denied relief on the claim, concluding that a rational review of the evidence did not permit jury instructions on manslaughter.

"The Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Boyle*, 260 F.3d 531 (6th Cir. 2001). Accordingly, the "failure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (quoting *Bagby v. Sowders,* 894 F.2d 792, 797 (6th Cir. 1990)).

McDaniels was charged with first-degree murder, an offense that carries the State's most severe penalty upon conviction—life imprisonment without the possibility of parole. *See* Mich. Comp. Laws § 750.316(1).   But even if McDaniels' case were deemed comparable to a capital case, a lesser-included offense instruction is not required as there was not sufficient evidence for a jury to reach a manslaughter verdict. The Michigan Court of Appeals reasoned that "voluntary and involuntary manslaughter are inferior or necessarily included offenses of murder," and "when a defendant is charged with murder,

an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence." *McDaniels*, 2004 WL 1292497, at *2 (quoting *People v. Mendoza*, 468 Mich. 527, 541 (2003)).

The Michigan Court of Appeals evaluated the evidence presented, and determined the facts did not support a finding of voluntary manslaughter. The court found:

> [T]he only possible evidence of provocation within the trial record is defendant's statement to Officer Simon during his interview that several months before he shot the victim, the victim and some accomplices "broke into [his] grandmother's house," injured his aunt by striking her head, and sold his grandmother's property.

*McDaniels,* 2004 WL 1292497, at *3.  The Court of Appeals went on to state:

> Even assuming that the armed robbery of defendant's grandmother and injury of his aunt were adequate provocation for him to search for the alleged perpetrators, defendant's own statement establishes that this provocative event occurred months before the shooting of the victim.  The several-month lapse of time between the alleged robbery and the shooting of the victim afforded defendant more than ample time "during which a reasonable person could control his passions."

*Id.* (quoting *Mendoza*, 468 Mich. at 535).

McDaniels nevertheless contends there was adequate provocation given that the victim appeared to be reaching for something before the shooting. But the Michigan Court of Appeals rejected McDaniels' argument and explained that it "fail[ed] to comprehend how the victim's mere act of movement alone could be adequate provocation of a heat of passion in defendant's mind." *Id.* at *3 n.2.  The court concluded that "a rational view of the evidence [did] not support the notion that defendant shot the victim after being provoked and while under the influence of the heat of passion."  *Id.* at *2.

McDaniels also requested a jury instruction on involuntary manslaughter on the basis that he intentionally aimed a firearm at the victim, but without malice. The trial court held

9

the facts precluded an instruction of involuntary manslaughter, and the Court of Appeals

affirmed, observing that:

> [S]everal witnesses testified at trial that they heard as many as five or six
> gunshots.  The sole eyewitness to the shooting testified that after she heard an
> initial gunshot, she looked down the street to see a man who wore a white t-shirt
> on his head walk from the passenger side of the victim's car around to the
> driver's side, point his gun at the victim, and fire two or three more shots.  Other
> witnesses testified that they viewed a man with what appeared to be a towel or
> rag over his face just prior to hearing gunshots.  Further, the medical examiner's
> testimony established that the victim sustained one gunshot wound that traveled
> from his right side to his left, and four gunshot wounds that traveled from his left
> side toward his right.

*McDaniels*, 2004 WL 1292497, at *3. The Court of Appeals concluded from "these

unrebutted circumstances" that "no rational view of the evidence would permit the

conclusion that [McDaniels] accidentally shot the victim."  *Id.*

A federal habeas court is bound by a "state court's interpretation of state law,

including one announced on direct appeal of the challenged conviction." *Bradshaw v.

Richey*, 546 U.S. 74, 76 (2005). Here, the facts of the case do not support a jury instruction

on either voluntary or involuntary manslaughter. The Michigan Court of Appeals reasonably

determined jury instructions on manslaughter were not appropriate, and McDaniels is not

entitled to relief, even assuming his challenge to the jury instructions is cognizable on

habeas review.

III.    Sufficiency Of The Evidence

McDaniels next contends that there was insufficient evidence to convict him of first-

degree murder.  Specifically, he claims there was no evidence the killing was premeditated

and deliberate.

"A defendant challenging the sufficiency of the evidence bears a very heavy burden."

*United States v. Prince*, 214 F.3d 740, 746 (6th Cir. 2000) (quotations marks and citation

omitted). "Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010).  First, after viewing the evidence in the light most favorable to the prosecution, the court must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Second, even were the court "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, first degree murder requires a showing by the prosecution that the defendant intentionally killed the victim, and that the act of killing was premeditated and deliberate. *People v. Schollaert*, 194 Mich. App. 158, 170 (1992). Here, the Michigan Court of Appeals found the evidence supported the jury conviction for first degree murder. In concluding there was sufficient evidence of premeditation and deliberation, the Court of Appeals noted that McDaniels "had a preexisting motivation to harm the victim," he armed himself on the day of the shooting "and donned a mask before searching out the victim." *McDaniels*, 2004 WL 1292497, at *4. He also "shot the victim once in the neck before rounding the car and shooting the victim four more times, indicat[ing] that [he] had abundant time to rethink his planned retribution, or at least refrain from firing more than one shot at the victim." *Id.*; *see also People v. Berry*, 198 Mich. App. 123, 128 (1993) (finding premeditation inferred from "the type of weapon used and the location of the wounds inflicted"). Finally, McDaniels fled "from the scene and attempt[ed] to conceal his involvement in the shooting." *Id.* A rational trier of fact could have drawn from the evidence

11

described that McDaniels' decision was premeditated and the act of killing was deliberate. McDaniels' insufficiency of the evidence claim therefore fails.

IV.   Procedurally Defaulted Claims

Respondent John Prelesnik contends McDaniels' claims two through seven are procedurally defaulted because McDaniels failed to properly present his claims for review in the Michigan appellate court.

Under the doctrine of procedural default "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012). The Sixth Circuit deems a habeas petitioner's claim procedurally defaulted if the following four factors are met: "(1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." *Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) (internal quotation mark and citation omitted). "To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look to the last reasoned state court decision disposing of the claim." *Id.* (quoting *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc)).

The record indicates that McDaniels raised claims two through seven in his motion for relief from judgment before the trial court. The trial court denied relief on the merits. McDaniels then had twelve months to seek leave to appeal that decision in the Michigan Court of Appeals. *See* Mich. Ct. R. 6.509(A) (former version of the rule provided a 12-month appeal time limit, which was amended to six months on September 28, 2011).

12

McDaniels did not do so. Consequently, the Michigan Court of Appeals denied his delayed application for leave to appeal as untimely under Michigan Court Rule 7.205(F)(3). And the Michigan Supreme Court then denied leave to appeal in a standard, unexplained order. The first and second procedural default factors are met. The third procedural-default factor also is satisfied, because the state court rules are an adequate and independent state ground for denying review of McDaniels' federal constitutional claims. The remaining question is whether McDaniels has shown cause for noncompliance and actual prejudice or a fundamental miscarriage of justice. McDaniels has not alleged cause and prejudice, but asserts that a failure to consider his claims will result in a miscarriage of justice.

"A fundamental miscarriage of justice results from the conviction of one who is actually innocent." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). A credible claim of actual innocence requires the petitioner "to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "A petitioner's burden . . . is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 539 (2006).

McDaniels purports to have newly discovered evidence that Investigator Barbara Simon perjured herself at trial when she stated there was no police report of a breaking and entering at McDaniels' relatives' home. But such a report did not exonerate McDaniels. It is unlikely that the jury would have reasonable doubt about McDaniels' guilt or innocence had they known about the police report. The report merely provided a motive for the

13

shooting. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to address the substantive merits of habeas claims two through seven. The claims are procedurally defaulted and do not require an adjudication on the merits.

V.    Amended Petition

McDaniels' amended habeas petition challenges Investigator Barbara Simon's trial testimony that there was no police report of a breaking and entering at McDaniels' relatives' home.  Following the trial, McDaniels discovered a police report of the incident.  Based on the report, McDaniels contends: (1) Investigator Simon perjured herself when she denied the existence of the report; (2) the prosecution knowingly used false and perjured testimony; (3) trial counsel was ineffective for failing to object to, and correct, Investigator Simon's false testimony; and (4) appellate counsel was ineffective for failing to investigate and raise the issue on direct appeal.  Additionally, McDaniels claims there was good cause for not raising the issues previously, and the state courts erred when they determined that the motion in which he raised the issues was a successive motion.

Respondent agues that McDaniels' amended petition is procedurally defaulted and barred by the one-year statute of limitations in 28 U.S.C. § 2244(d).  Neither the statute of limitations nor the doctrine of procedural default are jurisdictional limitations.  *See Holland v. Florida*, 560 U.S. 631, 645 (2010).  Accordingly, the Court will analyze the merits of McDaniels' amended petition.


   A.  Alleged Perjury

A preliminary issue is whether Investigator Simon perjured herself at trial when she denied the existence of a police report corresponding to the breaking and entering that McDaniels mentioned in his statement to Simon.  Although McDaniels claims to have a copy of the police report proving the breaking and entering occurred, such evidence does not mean Investigator Simon lied under oath when she denied the existence of the report. It is possible that she did not conduct a sufficiently thorough search of police records and that she was merely mistaken when she testified that there was no police report of the crime at the home of McDaniels' relatives. McDaniels offers no evidence Investigator Simon knew of the police report, and the Court declines to grant relief on the claim of perjury.

B.  The Prosecutor

Next, McDaniels contends that the prosecutor knew or should have known that Investigator Simon's testimony about the police report was false, and the prosecutor should have corrected Simon's testimony. Prosecutors may not deliberately deceive a court or jurors by presenting evidence they know is false.  *Giglio v. United States*, 405 U.S. 150, 153 (1972). Nor may they allow false testimony "to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). But to prevail on a claim that the prosecutor relied on false testimony, a habeas petitioner must show: (1) the testimony was false, (2) the testimony was material, and (3) the prosecutor knew the testimony was false. *Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 664 (2012).

McDaniels has obtained a copy of the police report in question.  Consequently, it now appears that Investigator Simon falsely testified that there was no report of the crime. But McDaniels has failed to show the prosecutor knew Investigator Simon's trial testimony was false.  McDaniels has also failed to show that the allegedly false testimony was material

evidence. At best, the police report would have substantiated McDaniels' pretrial statement to Investigator Simon that the shooting arose out of the prior incident, and that he confronted Blackwell about the breaking and entering. The information supplied a motive for the shooting, but it did not excuse the shooting. Consequently, the police report was not material evidence, and McDaniels' prosecutorial-misconduct claim fails.

C. Trial And Appellate Counsel

McDaniels asserts that his trial attorney was ineffective for failing to object to Investigator Simon's false testimony, and appellate counsel was ineffective for failing to investigate the breaking and entering and obtain a copy of the police report about the incident.  McDaniels contends that his attorneys' omissions prejudiced him because he could have used the police report to substantiate his claim that he shot Blackwell in self defense. Moreover, McDaniels alleges that he could have undermined Investigator Simon's credibility by showing her the police report.

To prevail on his claims, McDaniels must show that his attorneys' performances were deficient and that the deficient performances prejudiced the defense. *Strickland v. Washington*,  466 U.S. 668, 687 (1984).  An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*  To satisfy *Strickland*, McDaniels must show "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Id.*

McDaniels cannot make the necessary showing of deficiency and prejudice. Counsel's performance fails to meet the *Strickland* standard. Simon's testimony regarding

16

the report was not material, and trial and appellate counsel's failure to investigate and find the report did not prejudice the defense. The claim of ineffective assistance of counsel fails.

D.  State Courts And Successive Motions

McDaniels asserts that the state courts erred when they concluded that his post-conviction motion—raising the issue of perjury—was a successive motion and barred from substantive review.  McDaniels also claims that there was good cause for not previously raising the issue of Investigator Simon's alleged perjury.

As previously discussed, McDaniels' has failed to make out a claim for perjury. And as for the state courts' barring of McDaniels' post-conviction motion as a successive motion, "it is for state courts to say what state law is." *Watkins v. Murphy*, 292 F.3d 70, 74 (1st Cir. 2002).  The Sixth Circuit has held that "errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007). Repeatedly, the Sixth Circuit has explained that the scope of habeas does not "reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id.* (internal quotation marks and citation omitted). Federal courts must "presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim—resolving some motions with neither an evidentiary hearing nor an oral argument, some with an oral argument alone, some with both." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013).  For the following reasons, habeas relief is not warranted on McDaniels' claim that the state courts erred in determining that his post-conviction motion was a successive motion.

VI.   <u>Certificate Of Appealability</u>

Before a petitioner may appeal a decision of the Court, pursuant to 28 U.S.C. § 2253 the Court must determine if a certificate of appealability ("COA") is appropriate. When a district court enters a final order adverse to the applicant, it must either issue a certificate indicating the issues that satisfy the required showing, or provide reasons why such a certificate should not issue. *See* 28 U.S.C. § 2253(c)(3); *Strayhorn v. Booker*, 718 F. Supp. 2d 846, 854 (E.D. Mich. 2010). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* The substantial showing threshold is satisfied when a prisoner demonstrates "that reasonable jurists could debate whether (or, for that matter agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

When applying the standard, a district court may not conduct a full merits review. *Miller-El v. Cockrell*, 537 U.S. 322, 336–37 (2000). "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court "should limit its examination to a threshold inquiry into the underlying merit of his claims." *Id.* at 323. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a certificate of appealability should issue. And, an appeal of the district court's order may be taken if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The Court has reviewed the entire record of the case and conducted an inquiry under 28 U.S.C. § 2253. McDaniels has not made a substantial showing of the denial of a constitutional right with respect to his claims. Reasonable jurists could not debate whether the petition should have been resolved in a different manner. The Court discerns no good faith basis for an appeal, and will deny a certificate of appealability.

## CONCLUSION

The state courts' opinions and orders rejecting the Petitioner's claims were not contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable applications of the facts.  The state-court decisions also were not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.  Accordingly, the petitions for writ of habeas corpus are denied, and no certificate to appeal will be granted.

## ORDER

**WHEREFORE,** it is hereby **ORDERED** that McDaniels' Petitions for Writ of Habeas Corpus (document nos. 1, 21) are **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 28, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 28, 2015, by electronic and/or ordinary mail.

s/Carol Cohron

19

Case Manager